*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* A. J. MAKI, Minor.

UNPUBLISHED
June 04, 2026
1:44 PM

No. 377629
Oakland Circuit Court
Family Division
LC No. 2024-887085-NA

Before: TREBILCOCK, P.J., and CAMERON and LIEVENSE, JJ.

PER CURIAM.

In this termination-of-parental-rights appeal, respondent-mother challenges on due-process grounds the trial court's order terminating her parental rights to her minor child. We affirm.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Respondent had a history of substance and alcohol abuse beginning before AJM's birth in February 2021. Unfortunately, despite her receipt of various substance-abuse-related services, respondent's continued alcohol abuse brought her into frequent contact with police during the first few years of AJM's life. These incidents often resulted in respondent's hospitalization or arrest, and some involved violence perpetrated by respondent against herself or family members in AJM's presence.

Such incidents, together with respondent's intermittent incarceration, eventually led petitioner, the Department of Health and Human Services (DHHS), to petition for AJM's removal from respondent's care in February 2024. AJM was initially "safety planned" into the care of respondent's parents; within a matter of months, however, DHHS transferred AJM into the care of

another relative—respondent's cousin—after discovering respondent living with her parents (and AJM) upon her release from jail.[1]

By June, respondent moved to Ohio and voluntarily participated in a parenting class and virtual visitation with AJM. She still did not, however, have a permanent address or consistent employment. Around the same time, respondent pleaded no contest to statutory grounds for jurisdiction, and the trial court adopted a case-service plan and parent-agency treatment plan (collectively, her PATP). The PATP required respondent to participate in parenting classes, undergo a psychological evaluation, engage in individual and substance-abuse counseling, submit to drug testing, and obtain suitable housing and income. Despite her living out of state, DHHS believed it could accommodate most if not all of respondent's court-ordered services.

Over the following six months, respondent fell in and out of partial compliance with her PATP. She returned to Michigan (removing the difficulties caused by distance), but her primary barriers to reunification—alcohol abuse and criminality—persisted. So, in early 2025, the trial court changed the permanency planning goal to adoption and directed DHHS to initiate termination proceedings.

Respondent's struggles fully complying with her PATP continued. In mid-2025, she pleaded no contest to statutory grounds for termination, and the trial court found such grounds existing under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (c)(*ii*) (failure to rectify other conditions), and (j) (reasonable likelihood of harm if returned to parent).

At the ensuing best-interest hearing, the parties presented documentary evidence, as well as testimony from AJM's caretaker (respondent's cousin), the foster-care worker, and a psychologist who evaluated respondent. This evidence indicated that, although respondent recently began complying more-fully with her PATP, her struggles with alcohol persisted, leading to testimony that (1) she showed little or no benefit from the services provided and would not timely benefit from additional services; (2) she was unable to adequately care for AJM at that time or in the foreseeable future; and (3) termination was in AJM's best interests.

After weighing this and other evidence, the referee found termination in AJM's best interests, even despite her placement with a relative. The trial court adopted that finding and entered an order terminating respondent's parental rights. Respondent now appeals.

## II. ANALYSIS

Each of respondent's claims on appeal involve an alleged deprivation of her due-process rights. Because she did not raise such constitutional arguments below, these issues are unpreserved and are reviewed for plain error affecting substantial rights. *In re Sanborn*, 337 Mich App 252, 268; 976 NW2d 44 (2021). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and

---

[1] AJM's putative father does not appear to be actively involved in her life, and he was not a party to the relevant proceedings below.

the plain error affected substantial rights." *Id*. at 258 (quotation marks and citation omitted). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re MJC*, 349 Mich App 42, 48; 27 NW3d 122 (2023) (quotation marks and citation omitted). "The party asserting plain error bears the burden of persuasion with respect to prejudice." *Id*.

## A. ADDITIONAL TIME TO COMPLY WITH PATP

Respondent first claims the trial court deprived her of due process by terminating her parental rights to AJM without giving respondent additional time to comply with and benefit from her PATP. We cannot agree.

To be sure, a parent has a constitutionally protected "fundamental right to direct the care, custody, and control of his or her child free from governmental interference[.]" *In re Sanders*, 495 Mich 394, 415; 852 NW2d 524 (2014). But the procedures designed to protect against the erroneous deprivation of that particular right occur primarily at the *adjudicative* phase of child protective proceedings. *In re Ferranti*, 504 Mich 1, 15-16, 28; 934 NW2d 610 (2019). Indeed, "it is the adjudication that protects the parents' fundamental right to direct the care, custody, and control of their children, while also ensuring that the state can protect the health and safety of the children." *Id.* at 28 (cleaned up; quotation marks and citation omitted).

Respondent received an adjudication, with which she takes no issue. Instead, she claims the deprivation of her fundamental right to the care and custody of AJM occurred during the *dispositional*—and, more specifically, *best-interest*—phase of the proceedings. Her previous adjudication, however, divested respondent of her "constitutional right to parent her child," instead giving such authority to the state. *Id*. at 16. The focus further shifted away from respondent's interests in favor of AJM's after the trial court determined that statutory grounds existed to terminate her parental rights. *In re Moss*, 301 Mich App 76, 86-90; 836 NW2d 182 (2013). Again, respondent does not challenge that determination, the procedures surrounding it, or the reunification services DHHS provided her throughout the proceedings.

At the best-interest stage, respondent still had an interest in maintaining a relationship with AJM. *Id*. at 87. But respondent's arguments miss that the focus of the proceedings at that stage shifted to AJM's interests, which by then outweighed respondent's. *Id*. at 87-89. Respondent was afforded the requisite best-interest hearing, and as with her adjudication hearing, she takes no issue with the procedures used or evidence presented during it. Indeed, she does not challenge the referee's ultimate finding that termination *was in AJM's best interests*, instead focusing only on one of several relevant best-interest factors—her compliance with the PATP. *In re White*, 303 Mich App 701, 713-714; 846 NW2d 61 (2014). Respondent admits to having been "in and out of partial compliance" with the PATP and only "starting to comply more fully" at the time of the best-interest hearing. She does not point to anything contradicting the documentary evidence and testimony from various witnesses indicating that she failed to benefit from the services already provided and likely would not timely benefit from further services.

On this record, respondent fails to demonstrate any error or due-process violation warranting relief by virtue of the trial court's determination, at the best-interest stage, that affording respondent additional time was not in AJM's best interests.

### B. CONSIDERATION OF RELATIVE PLACEMENT OR GUARDIANSHIP

In the alternative, respondent cursorily argues that due process requires trial courts to consider, as a mandatory best-interest factor, "custodial templates" short of termination that "assure continued placement with the relative" while allowing the parent continuing contact with his or her child. But respondent "cannot simply assert an error or announce a position and then leave it to this Court to discover and rationalize the basis for [her] claims, or unravel and elaborate for [her her] argument, and then search for authority either to sustain or reject [her] position." *In re TK*, 306 Mich App 698, 712; 859 NW2d 208 (2014) (quotation marks and citation omitted; alterations in original). Before us respondent concedes that a "custodial template" requirement does not currently exist. And she offers no reason it should be a mandatory best-interest factor other than the serious nature of the deprivation at risk (i.e., termination of parental rights).[2] Even in that regard, however, she fails to explain how the existing factors inadequately address the risks that such an additional requirement would protect against—including, in particular, the already mandatory consideration of a child's placement with a relative, which weighs against termination. *In re Olive/Metts Minors*, 297 Mich App 35, 41-44; 823 NW2d 144 (2012). Respondent has, therefore, failed to demonstrate that the proffered consideration is necessary to protect against due-process deprivations, or that the trial court plainly erred by failing to expressly consider it.

And even if it was plain error for the trial court not to consider other custodial arrangements, respondent does not identify any record evidence indicating that such a consideration would have served AJM's best interests, let alone outweighed all the other factors the referee found in favor of termination (which respondent does not challenge). Accordingly, respondent cannot demonstrate that the outcome of the best-interest hearing would have been different had the referee been required to consider alternative custodial options and, thus, fails to demonstrate that any plain error affected her substantial rights.

---

[2] Though respondent's arguments pertain only to the best-interest stage, we note that MCL 712A.19a directs courts to consider various placement options in connection with permanency planning hearings—i.e., before termination proceedings are initiated. These options include returning a child to a parent, placing a child in a legal guardianship, or permanently placing a child with "a fit and willing relative." MCL 712A.19a(4)(a), (c), and (d). If the court determines that returning to the parent is not in the child's best interests, however, it can order DHHS to initiate termination proceedings rather than pursuing reunification or alternative placement options. MCL 712A.19a(4)(b), (8), and (9). The trial court held such a permanency planning hearing here, after which it instructed DHHS to file a petition seeking termination of respondent's parental rights. Respondent does not challenge any aspect of that hearing or determination.

## III.  CONCLUSION

For these reasons, we affirm the trial court's judgment.

/s/ Christopher M. Trebilcock
/s/ Thomas C. Cameron
/s/ Andrew J. Lievense